UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMY FELTON MORGAN,

            Petitioner,

v.                                CASE NO. 06-CV-13947
                                HONORABLE DENISE PAGE HOOD

ANDREW JACKSON,

            Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I.  Introduction**

Michigan prisoner Jimmy Felton Morgan ("Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  Petitioner was convicted of two counts of first-degree criminal sexual conduct involving the sexual penetration of a person between 13 and 16 years of age who is a member of the same household, MICH. COMP. LAWS § 750.520(b)(1)(b)(i); four counts of first-degree criminal sexual conduct involving sexual penetration with personal injury and the use of force or coercion, MICH. COMP. LAWS § 750.520(b)(1)(f), extortion, MICH. COMP. LAWS § 750.213, felonious assault, MICH. COMP. LAWS § 750.82, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Saginaw County Circuit Court in 2002.  He was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to eight concurrent terms of life imprisonment, a concurrent term of 10 to 15 years imprisonment, and a consecutive term of two years imprisonment

1

on those convictions.  In his pleadings, Petitioner raises claims concerning the effectiveness of trial and appellate counsel and cumulative error.  For the reasons stated herein, the Court denies the petition for writ of habeas corpus.

## II.  Facts and Procedural History

Petitioner's convictions arise from his assaults upon his live-in girlfriend and her three teenage daughters at their home in Saginaw, Michigan in 2001.  Prior to trial, defense counsel filed a motion for a bill of particulars, a motion to quash the extortion charge on double jeopardy grounds, and a motion to sever the felon in possession charge.  The trial court granted the motion for a bill of particulars, but denied the other motions.  Also prior to trial, the prosecutor filed a motion to admit other acts evidence under M.C.R. 404(b) contending that uncharged prior acts of sexual abuse were relevant to show a common plan or scheme, to support the extortion charge, to refute a defense of fabrication, and to explain the reluctance of the girls to report and/or admit the sexual abuse. Defense counsel opposed the motion arguing that admitting the uncharged acts would be more prejudicial than probative.  The trial court ruled that it would decide the admissibility of such evidence on a case-by-case basis upon presentation of the testimony at trial.  The prosecutor sought an interlocutory appeal, but the Michigan Court of Appeals declined to hear it.  The case proceeded to trial.

The trial testimony revealed that Petitioner lived with his girlfriend, Betty Aultman, her twin 18-year-old daughters, Stacy and Tracy Bivens, and her 14-year-old daughter, Dewand Bivens, in a house on Whittier Street in Saginaw, Michigan in May, 2001.  Petitioner had lived with Aultman and her daughters for five years and they knew Petitioner as Diablo or Lo Edwards.  The trial testimony further indicated that Petitioner sexually assaulted the teenage girls, assaulted Betty

Aultman by pointing a gun to her head, and threatened to harm all of them if they did not comply with his demands. The parties stipulated that Petitioner was convicted of a breaking and entering in 1986.

Stacy Bivens testified that Petitioner performed oral and anal sex upon her against her will on separate weekdays in May, 2001. In the first incident, Petitioner asked her to bring him food in his bedroom, then told her to remove her clothes. Stacy started to cry and refused, but Petitioner told her that he would keep her from going to school, church, and work and would punish her mother. She then removed her clothes and laid on the bed. Petitioner performed oral sex upon her. He then threatened to kill her, her mother, and her sisters if she told anyone what had happened. The second incident arose in a similar fashion, but Petitioner required her to engage in anal sex, which she described as painful. Stacy also described another incident in which Petitioner called her into his room for sex, then slapped her after she told him that she would go to her boyfriend if she wanted sex. Petitioner then forced her to remove her clothes and performed oral sex on her. Stacy could not recall when this occurred.

Stacy admitted that she did not like Petitioner and explained that she felt that way because of the sexual abuse and because he beat her mother. She recalled a fight between her mother and Petitioner in April, 2000 when Petitioner put a gun to her head and threatened to kill her and did the same to her mother. Stacy recalled seeing Petitioner with a gun on several occasions and identified a gun found at her home as Petitioner's gun.

On May 21, 2001, Petitioner called Stacy into his bedroom after her mother left for work and asked her if she wanted to "get her month over with," which she interpreted to be a final demand for sex that month. She refused. Petitioner threatened to keep her home from school, but ultimately let

3

her go.  While at school that day, she and Tracy told their friend, Dawnika Cope, that they were tired of "doing stuff" with Petitioner and that they were planning to poison him.  They brought wood alcohol and a gin bottle to school.  Cope reported the situation to school officials.  Stacy and Tracy were pulled from class.  They both denied being abused by Petitioner.  Stacy explained that she did not want the police and child protective services coming to their house and she was afraid due to Petitioner's threats.  High school officials nonetheless contacted Dewand's middle school to report their concerns.

After school, Stacy and Tracy went to work.  Their mother picked them up later that night so that they could visit Dewand at the hospital.  Dewand was upset and told her that she "had to tell" because people kept asking her.  After leaving the hospital, Stacy, Tracy, and their mother went to the Underground Railroad shelter and Dewand was taken into protective child custody.  Stacy was subsequently interviewed by police.  On May 23, 2001, she denied being sexually abused by Petitioner, said that he never hit her, and denied seeing him with a gun.  On May 25, 2001, she told the police that Petitioner had sexually abused her.  At trial, Stacy said that she initially lied to the police because she was worried about being removed from her home.

During Stacy's testimony, the prosecution sought to include testimony of Petitioner's history of sexual assaults upon her, particularly those which occurred while she and her family lived at a prior residence.  Defense counsel objected to their admission.  Following an offer of proof and argument by the parties (without the jury present), the trial court found that the evidence, while relevant and evidence of a common plan or scheme, was more prejudicial than probative and deemed it inadmissible under Michigan Rule of Evidence 404(b).  The prosecution filed an interlocutory appeal, but the Michigan Court of Appeals denied the request stating that the prosecution failed to

4

persuade the court of the need for immediate review.

Tracy Bivens testified in a manner similar to Stacy.  Tracy testified that Petitioner performed oral and anal sex upon her against her will in May, 2001.  She explained that Petitioner called her into his bedroom on May 1, 2001 and asked her if he could "lick it."  She said no, but he threatened to keep her home from school, so she removed her clothes and allowed him to perform oral sex upon her.  Tracy testified that Petitioner called her into his room again on May 5, 2001 and threatened to hurt her and her mother.  Petitioner started to perform oral sex upon her, said he wanted to do something different, and switched to anal sex.  Tracy said that it was painful and caused her to bleed. Petitioner also called her into his bedroom the next day, but did not have sex with her.  He threatened to kill her if she ever crossed him.

Tracy further testified that Petitioner called her into his room on May 21, 2001 and asked her if she wanted to "get her month over with," but she refused.  Petitioner threatened to keep her home from school, but let her leave.  Tracy also testified about the plan to poison Petitioner and about her discussions with Dawnika Cope, another friend, and school authorities.  Tracy recalled hearing a gunshot one day in 2000 when Petitioner and her mother had a fight.  She saw Petitioner with a gun on several occasions after that incident and identified the gun at trial.

Dewand Bivens testified that Petitioner called her into his bedroom on May 21, 2001 after her mother left for work and her sisters left for school.  He asked her if he could "lick it."  She said no.  Petitioner said he would not let her go to school unless she complied.  He also threatened to "blow the roof off" when her mother came home, which meant that he would beat her mother.  She let him remove her clothes and perform oral sex on her.  Petitioner then had vaginal sex with her. Following the incident, Dewand took a shower and got ready for school.  She fell asleep until her

5

mother came home and drove her to school.  She did not tell her mother what happened because she was afraid.

While at school that day, Dewand was called out of class and the principal asked her if anyone was "messing" with her.  She said no because she was afraid of Petitioner.  When the principal told her that he already knew what was happening, Dewand admitted that Petitioner had sexually assaulted her.  She was taken to the hospital for an examination.  She was then placed at Child Haven and lived with an aunt for a period of time.

Betty Aultman testified that she did not know about any sexual abuse until she was called to Dewand's school on May 21, 2001 and took her to the hospital.  Aultman acknowledged that she had been contacted by teacher Dorthea Bandy with concerns about Tracy a few months earlier, but Tracy had denied being abused.  Aultman recalled an incident in April, 2000 when Petitioner was drunk and they got into an argument.  Petitioner pointed a gun at her head and at Stacy's head and threatened to kill them.  She took the girls to a relative's home for two days.  When she returned home, Petitioner promised not to threaten her with a gun again.  She and Petitioner had heated arguments in front of her daughters after that time, but he did not pull out the gun when he was angry.  Aultman testified that police searched her home on May 23, 2001, but did not find Petitioner's gun.  In June, 2001, however, she found the gun underneath a clothes basket in her closet and contacted the police.  She identified that gun as Petitioner's gun at trial.

Dawnika Cope testified that a week or two before May 21, 2001 the twins had told her that they and their younger sister were being sexually abused by Petitioner, that it had been going on for a "couple of years," and that Petitioner had threatened to kill them if they told anyone.  Cope also said that the twins told her that Petitioner had sex with Dewand at 3:00 a.m. one night and Dewand

6

came to their room to sleep.  Cope said that she spoke to school employee Ethel Shaw about the matter several times.  When the twins told her about their plan to kill Petitioner, she reported it to Ms. Shaw.  Ultimately, the proper authorities were notified and Cope gave a statement to the police on May 29, 2001.

School officials also testified at trial.  Saginaw High School Teacher Dorthea Bandy testified that she spoke to Tracy about scratches on her neck in May, 2001 though it could have been earlier.  Stacy was present during the conversation.  Tracy eventually told her that she got the scratches fighting off Petitioner's sexual advances.  The girls also told her that Petitioner had threatened them with a gun.  Ms. Bandy told the girls to tell their mother, but they said they were going to take care of it on their own.  Ms. Bandy then learned of their plan to poison Petitioner and insisted that they speak to their mother.  The next day, the girls told her that their mother had reported it.  Ms. Bandy subsequently discovered that Petitioner was still in the home, so she spoke with Ethel Shaw.  At that point, Dawnika Cope had spoken to Ms. Shaw, the middle school was contacted, and the police were notified.

Saginaw High School Special Education Coordinator Ethel Shaw testified that Ms. Bandy told her that one of the twins had been in a fight with Petitioner in March, 2001 and had scars on her neck.  Ms. Shaw told Ms. Bandy to handle it.  Ms. Bandy later said that she had spoken with the twins' mother who was going to notify police.  In May, 2001, Dawnika Cope told Ms. Shaw that the twins and their younger sister were being abused and that the twins were planning to poison Petitioner.  Ms. Shaw spoke to the twins twice, but they denied the abuse.  Shaw called Dewand's middle school and spoke to the principal.  When she informed the twins of this fact, they said that they were worried about Dewand being taken away, but admitted the abuse.

7

Webber Middle School Principal Clifford Davis testified that he spoke with Dewand Bivens on May 21, 2001 after receiving a call from Ethel Shaw about possible abuse. Dewand was quiet at first, then began to cry. She eventually admitted, first in writing and then verbally, that Petitioner had sexually assaulted her. Davis contacted child protective services.

The medical testimony at trial revealed that Dewand Bivens had cervical reddening which could be consistent with sexual intercourse, but could also be caused by other conditions such as allergies or infection. Dewand did not have trauma to her hymen, and no foreign hairs or semen were found on her body or clothing.

Saginaw Police Detective James Livingston testified about his investigation of the case. He was present when the three girls were questioned. Following those interviews, the police obtained a warrant and searched the home. The police recovered bedding and other items, but did not find Petitioner's gun. They also observed packed bags and bundled items in the home and found Petitioner hiding in the attic. The police subsequently obtained the gun found by Betty Aultman and submitted it, along with the bedding and other items, to the crime lab for testing.

A forensic scientist from the Michigan State Police testified that a bedroom comforter taken from the home contained a semen sample consistent with Petitioner's DNA and genetic material consistent with Dewand's DNA. The expert stated that Dewand's genetic material could have come from saliva, nasal mucous, or vaginal secretions. Testing could not determine whether the stains from the comforter were left at the same time or different times. A fingerprint expert testified that no identifiable prints were found on the gun recovered from the home.

At the close of the prosecution's case, defense counsel moved for a directed verdict, but the trial court denied the motion. Petitioner did not testify at trial. His defense was that the girls were

8

lying about the sexual assaults because they did not like him and wanted him out of the house. Defense counsel implemented this defense by pointing out the inconsistencies between their statements to authorities, their preliminary examination testimony, and their trial testimony and noting the discrepancies among the testimony offered by the prosecution witnesses.  The jury nonetheless found Petitioner guilty as charged.

Petitioner, through counsel, filed a motion for new trial asserting that the prosecutor engaged in misconduct by referring to Petitioner's use of an alias, using Petitioner's unemployment and lack of means against him, and arguing inadmissible other acts evidence.  The trial court denied the motion finding that the alias and economic references were proper and that the prosecution did not violate its rulings concerning the other acts evidence.

The trial court subsequently sentenced Petitioner as a fourth habitual offender to eight concurrent terms of life imprisonment on the sexual assault, extortion, and felon in possession convictions, a concurrent term of 10 to 15 years imprisonment on the felonious assault conviction, and a consecutive term of two years imprisonment on the felony firearm conviction.

Following his convictions and sentencing, Petitioner, through counsel, filed an appeal as of right and a motion to remand with the Michigan Court of Appeals asserting that:  (1) trial counsel was ineffective for failing to move for severance of the charges against the different individuals; and (2) trial counsel was ineffective for failing to move for a mistrial when "other acts" evidence was revealed to the jury and for failing to request a limiting instruction on such evidence as well as Petitioner's prior breaking and entering conviction.  The Michigan Court of Appeals denied the motion to remand and affirmed Petitioner's convictions.  *People v. Morgan*, No. 243332, 2003 WL 22902834 (Mich. Ct. App. Dec. 9, 2003).  Petitioner filed an application for leave to appeal with the

9

Michigan Supreme Court, which was denied in a standard order. *People v. Johnson*, 470 Mich. 868, 680 N.W.2d 898 (2004).

Petitioner thereafter filed a motion for relief from judgment with the state trial court, alleging that: (1) trial counsel was ineffective for failing to move for severance of the charges against the different individuals and appellate counsel was ineffective for failing to properly argue the issue on appeal; (2) trial counsel was ineffective for failing to investigate and call his own medical expert; (3) trial counsel was ineffective for failing to put on a proper defense, investigate, and object to hearsay at trial; (4) trial counsel was ineffective for failing to move to quash the felon in possession charge; (5) appellate counsel was ineffective for failing to timely file a motion for new trial and evidentiary hearing on the ineffective assistance of counsel issues; (6) appellate counsel was ineffective for failing to raise the foregoing issues on direct appeal; and (7) the cumulative effect of the errors denied him a fair trial. The trial court denied the motion finding that certain claims were previously addressed on direct appeal and the remaining claims lacked merit. *People v. Morgan*, No. 01-020508-FC-1 (Saginaw Co. Cir. Ct. Feb. 1, 2005). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims, which was denied for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Morgan*, No. 261831 (Mich. Ct. App. Oct. 14, 2005) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Morgan*, 474 Mich 985, 707 N.W.2d 202 (2005).

Petitioner then filed his federal habeas petition, raising the ineffective assistance of trial and appellate counsel and cumulative error claims presented to the state courts on direct appeal and collateral review of his convictions. Respondent has filed an answer to the petition contending that

10

it should be denied because the claims lack merit and/or are barred by procedural default.  Petitioner

has filed a reply to that answer.

### III.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition

after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA

provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
>          application of, clearly established Federal law, as determined by the
>          Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of
>          the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was

either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established

precedents, or was based upon an unreasonable determination of the facts."  *Price v. Vincent*, 538

U.S. 634, 639 (2003).  "A state court's decision is 'contrary to' . . . clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court

and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also*

11

*Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual

12

determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Analysis

### A.      Procedural Default

As an initial matter, Respondent contends that several of Petitioner's habeas claims, *i.e.*, those he first presented to the state courts in his motion for relief from judgment, are barred by procedural default because he failed to present them on direct appeal despite the opportunity to do so, and the Michigan appellate courts denied relief based upon that failure.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case clearly and expressly rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001); *see also Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state court judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

A state prisoner who fails to comply with a state's procedural rules may still have his claims heard on federal habeas review if he can establish cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-

13

85 (6th Cir. 1996).

Furthermore, procedural default is not a jurisdictional bar to reviewing a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 894 (1997). Federal courts are "not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Additionally, when a habeas petitioner alleges that appellate counsel was ineffective for failing to raise an issue on direct appeal, which could constitute cause to excuse a procedural default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), the cause and prejudice inquiry merges with an analysis of the merits of the defaulted claims and it may be more efficient to consider the merits of the claims. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004) (citing *Strickler v. Greene*, 527 U.S. 263, 282 (1999)). Such is the case here. Accordingly, the Court shall proceed to the merits of Petitioner's claims.

### B.      Effectiveness of Trial Counsel

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to seek severance of the charges, failing to move for a mistrial when other acts evidence was revealed to the jury, failing to request limiting instructions as to other acts evidence, failing to investigate and call his own medical expert, failing to put on a proper defense, investigate, and object to hearsay at trial, and failing to move to quash the felon in possession charge. Respondent contends that the first two claims lack merit and the remaining claims are barred by procedural default and/or lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

### 1.   Severance

Petitioner first asserts that trial counsel was ineffective for failing to seek severance of the

charges involving the different victims.  Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim, finding that severance decisions were part of trial strategy and Petitioner had failed to rebut the presumption that counsel's decision was sound trial strategy.  The court further determined that Petitioner had not provided any evidence to indicate that he was prejudiced by counsel's conduct.  *Morgan*, 2003 WL 22902834  at *1.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.  First, trial counsel may have reasonably determined that a severance motion would have been futile because the charges were sufficiently related.  Under Michigan law, severance is required "only when a defendant shows that it is necessary to avoid prejudice to his substantial rights."  *Clark v. McLemore*, 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003) (citing Mich. Ct. R. 6.120(C)).  "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 52, 492 N.W.2d 490 (1992)).  Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60, 524 N.W.2d 682 (1994).

At the time of Petitioner's trial, Michigan Court Rule 6.120 provided:

(A) Permissive Joinder. An information or indictment may charge a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.

(B) Right of Severance; Unrelated Offenses. On the defendant's motion, the court must sever unrelated offenses for separate trials. For purposes of this rule, two offenses are related if they are based on

(1) the same conduct, or

(2) a series of connected acts or acts constituting part of a single scheme or plan.

(C) Other Joinder or Severance. On the motion of either party, except as to offenses severed under subrule (B), the court may join or sever offenses on the ground that joinder or severance is appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial. Subject to an objection by either party, the court may sever offenses on its own initiative.

Mich. Ct. R. 6.120 (prior to 2006 amendments).

In this case, the record indicates that the sexual assaults were sufficiently similar and close in time to be part of a single scheme or plan by Petitioner to abuse the teenage girls who were members of his household. The gun assault and extortion charges were related because those acts were part of the coercion Petitioner used to get the girls to submit to his sexual demands. Those acts also explained how Petitioner controlled the victims and why they were afraid of him and reluctant to admit the abuse. Trial of the related charges involved the same witnesses, an overlap of testimony and evidence, and was more efficient for the parties and the court. Given such circumstances, Petitioner has not shown that severance was required or would have been granted under state law. He cannot establish that counsel was deficient for not seeking to sever the charges as to each victim.

Moreover, defense counsel was clearly aware of the severance issue. The record reflects that trial counsel moved for severance of the felon in possession of a firearm charge, but the trial court denied the request. Given the trial court's decision, as well as the preference for joint trials under state law, counsel may have reasonably determined that seeking a severance on the other charges would have been futile as the trial court was unlikely to grant such motion. *See, e.g., Van*

17

*v. Jones,* 475 F.3d 292, 314 (6th Cir. 2007).  Defense counsel cannot be deemed ineffective for failing to make a futile motion.  *See McQueen*, 99 F.3d at 1316.

Counsel may have also reasonably determined that a trial on all of the counts would benefit Petitioner because he could emphasize the inconsistencies in the victims' testimony and more effectively argue that they did not like him, were afraid of him, and were conspiring to bring false charges against him to remove him from their home.  This strategy is reflected in defense counsel's actions throughout the proceedings.  Counsel may have hoped for a compromise verdict in which Petitioner would be acquitted of the more serious charges even if convicted of lesser offenses.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002).  This Court will not second-guess counsel's reasonable trial strategy.

Petitioner has also failed to establish that he was prejudiced by counsel's conduct.  As noted, the assaults and extortion were related as part of a common plan or scheme, and could also be relevant for establishing motive.  Evidence of the assaults against the different victims would have been admissible evidence under Michigan Rule of Evidence 404(b) in separate trials.  In fact, the trial court indicated as much when it denied the prosecution's motion to admit Stacy Bivens' testimony describing Petitioner's history of other similar acts of sexual abuse.  *See* Trial Tr. Vol. IV, p. 136 (noting that the acts against the multiple victims could establish a common plan or scheme such that the use of prior uncharged acts was unnecessary).  Consequently, Petitioner cannot establish that he was prejudiced by counsel's decision not to seek severance of the charges involving the different individuals.  *See Krist v. Foltz,* 804 F.2d 944, 947-48 (6th Cir. 1986) (while joinder of two robbery counts may have been improper, similarity of the robberies and their

18

closeness in time would have made evidence of one crime admissible at separate trial of the other such that petitioner was not prejudiced by counsel's failure to seek severance); *Woodruff v. Lafler*, No. 05-CV-74623-DT, 2007 WL 522704, *5-6 (E.D. Mich. Feb. 14, 2007) (habeas petitioner failed to show prejudice from counsel's failure to seek severance where the acts would have been cross-admissible). There was ample evidence against Petitioner to support his convictions as to each count and he has not shown that he was prejudiced by having one trial on all of the charges against him. Habeas relief is not warranted on this claim.

      2.    Other Acts Evidence - Failure to Object, Seek a Mistrial, or Request Limiting Instructions

Petitioner next asserts that trial counsel was ineffective for failing to object when other acts evidence was revealed to the jury. The Michigan Court of Appeals denied relief on this claim finding that Petitioner could not establish that he was prejudiced by counsel's failure to object to the "few brief references" to other uncharged acts given the "vast admissible testimony" that established Petitioner's guilt of the charged offenses. *See Morgan*, 2003 WL 22902834 at *2.

Having reviewed the record, the Court finds that this decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. First, Petitioner has not established that counsel was deficient with regard to the other acts evidence issues. Counsel succeeded in convincing the trial court to preclude much of the other acts evidence that the prosecution sought to admit at trial. *See* Trial Tr. Vol. IV, p. 135-36. This alone was a significant accomplishment given that the admission of such acts as evidence of a common scheme or plan is discretionary with the trial court and could have just as easily been deemed admissible under state law. *See People v. Sabin (After Remand)*, 463 Mich. 43, 614 N.W.2d 888 (2000). Counsel also made several relevant objections to such matters during trial. *See* Trial Tr. Vol. IV, p. 76, 95-99,

19

112, Vol V, p. 142.  To the extent that other acts were referenced during the testimony, counsel may have reasonably decided that the references were brief and that it would be better to let the remarks pass rather than to draw the jury's attention to them.  The record also indicates that counsel used certain references, including those made by Dawnika Cope, to highlight inconsistencies in the testimony and further the defense claim of fabrication.  *See, e.g.,* Trial Tr. Vol. VIII, pp. 88-92.  The record reflects that counsel appeared to make reasoned decisions about such matters throughout the course of trial.

Second, Petitioner has not shown that he was prejudiced by any lack of objection by defense counsel.  Petitioner has failed to demonstrate that had counsel objected, the outcome of the proceeding would have been different. .  The references to inadmissible evidence were relatively few, were not detailed, and were not relied upon by the prosecution to make a character or propensity argument.  In denying the motion for new trial, the trial court ruled that the prosecution did not violate its orders regarding the other acts evidence.  Petitioner has failed to establish that counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted on this claim.

Petitioner relatedly asserts that counsel was ineffective for failing to seek a mistrial after inadmissible other acts evidence was revealed to the jury.  The Michigan Court of Appeals denied relief on this claim finding that Petitioner could not establish that he was prejudiced by any failure to request a mistrial because such a motion would likely have been denied given the trial court's denial of his new trial motion which raised the same issue.  *See Morgan*, 2003 WL 22902834 at *2.  Given the "few brief references" to other acts and the "vast" amount of admissible evidence of guilt, as well as the trial court's denial of the new trial motion, Petitioner cannot establish that counsel was ineffective for failing to move for a mistrial.  As noted, counsel cannot be deemed

20

ineffective for failing to make a futile motion. *See McQueen*, 99 F.3d at 1316. Habeas relief is not warranted on this claim.

Petitioner also asserts that trial counsel was ineffective for failing to request limiting instructions regarding the excluded other acts evidence and the use of his prior breaking and entering conviction. The Michigan Court of Appeals denied relief on this claim finding that Petitioner had not overcome the presumption that counsel's conduct was sound trial strategy. *See Morgan*, 2003 WL 22902834 at *2-3. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Counsel may have reasonably determined that such instructions would only serve to highlight Petitioner's other improper acts and to remind the jurors that he was a felon, which would be more detrimental than beneficial to the defense. Additionally, the Court notes that the prosecution did not make an improper character or propensity argument at trial. Petitioner has not shown that trial counsel erred or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this claim.

### 3. Medical or DNA Expert

Petitioner also asserts that trial counsel was ineffective for failing to investigate and retain his own medical and/or DNA expert to refute the evidence concerning Dewand Bivens' cervical redness and the DNA evidence recovered from the bedding. Petitioner first raised this issue in his motion for relief from judgment. The trial court denied relief on this claim finding that counsel's decision was sound trial strategy and that Petitioner was not deprived of a substantial defense.

It is well-established that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Wiggins v. Smith*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v*

*Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007) ; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994).  "American Bar Association standards ... also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987); *see also Rompilla v. Beard*, 543 U.S. 374, 387 (2005) (noting that the ABA standards provide guidance for determining the reasonableness of counsel's conduct).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258.

That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  When making strategic decisions, counsel's conduct must be reasonable.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

In this case, Petitioner has not established that trial counsel's performance was deficient. The record reveals that counsel challenged the medical testimony at trial and those witnesses admitted that Dewand Bivens' cervical redness could have been caused by other conditions, such as allergy or infection, and she exhibited no other physical trauma.  The record also reveals that counsel contested the DNA evidence at trial.  The expert witness acknowledged that Dewand's DNA could have come from any bodily fluids and could not be dated (in relation to Petitioner's semen deposit).  Dewand also testified that she watched television while lying on the bed in that

22

room.  Trial counsel may have reasonably determined that eliciting such testimony from the prosecution's own witnesses was an effective trial strategy and that further expert evidence was unnecessary and/or would not have benefitted the defense.

Petitioner has not shown that he was prejudiced by counsel's conduct given that he has not shown that any defense experts would have provided favorable testimony, *i.e.*, by presenting additional information which would have been uncovered to support his defense.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not warrant habeas relief); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991) (bald assertions do not provide sufficient basis for an evidentiary hearing in habeas proceedings).  Petitioner has not established that counsel was ineffective in this regard.  Habeas relief is not warranted on this claim.

### 4. Investigating and Conducting a Defense

Petitioner also asserts that trial counsel was ineffective for failing to investigate his case and for failing to object to hearsay testimony by Dawnika Cope, Ethel Shaw, Clifford Davis, and Dorthea Bandy at trial.  Petitioner first raised this issue in his motion for relief from judgment.  The trial court rejected this claim finding that Petitioner had failed to establish that counsel was ineffective.  The Court finds that the state post-conviction court's conclusion is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.

First, Petitioner has not established that counsel failed to sufficiently investigate potential witnesses about the girls' animosity toward him or that counsel failed to adequately question the girls about their feelings.  Through the prosecution and defense counsel's questioning of the girls,

23

their mother, and several other witnesses, the jury was well aware that the girls did not like Petitioner and that they were afraid of him. Defense counsel also vigorously argued the defense claim that the girls were fabricating the sexual abuse charges in order to get Petitioner out of their house. Petitioner has not provided any specific testimony or evidence that counsel should have discovered or offered which would have been exculpatory or particularly beneficial to his defense. As noted, conclusory allegations are insufficient to warrant habeas relief. *See Workman*, 160 F.3d at 287.

Second, Petitioner has not shown that counsel failed to object to inadmissible hearsay testimony or that he was prejudiced by counsel's performance. The record indicates that counsel made several hearsay objections at trial. *See, e.g.,* Trial Tr. Vol. V., pp. 102, 118, 120, 123, 142, 144, 175, Vol. VI, p. 40. Additionally, many of the statements that Petitioner believes were hearsay did not constitute hearsay because they were not offered to prove the truth of the matter asserted but were instead offered to show how the sexual assaults came to the attention of the authorities, or were offered as prior consistent statements to refute the defense of fabrication. *See* Mich. R. Evid. 801(c), (d)(1)(B). Petitioner has not established that counsel's performance was deficient. Even if counsel erred by failing to object to some inadmissible hearsay, Petitioner has not shown that he was prejudiced. The original declarants, namely the victims, testified at trial about the same matters. The prosecution also presented sufficient admissible evidence of guilt at trial. Petitioner has failed to establish that counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

### 5. Quashing the Felon in Possession Charge

Petitioner asserts that trial counsel was ineffective for failing to move to quash the felon in

24

possession charge.  Petitioner first raised this claim in his motion for relief from judgment.  The trial court determined that this claim lacked merit because Petitioner failed to provide the court with a written order from the concealed weapons licensing board indicating that his right to possess or use a firearm had been restored in order to establish that he was improperly charged as a felon in possession of a firearm.  *See* MICH. COMP. LAWS § 750.224f(2).  Petitioner has failed to establish that counsel was ineffective because he has not shown that his right to possess or use a firearm had been restored at the time of the incident as a matter of state law.  Counsel cannot be deemed ineffective for failing to make a futile motion.  *See McQueen*, 99 F.3d at 1316.  Habeas relief is not warranted on this claim.

### C.        Effectiveness of Appellate Counsel

Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to timely file a motion for new trial and evidentiary hearing with the trial court, for failing to properly argue the severance issue on appeal, and for failing to raise the issues presented on collateral review on direct appeal.  Respondent contends that these claims are barred by procedural default and/or lack merit.

### 1.        New Trial and Evidentiary Hearing

Petitioner first asserts that appellate counsel was ineffective for failing to properly seek a new trial and evidentiary hearing with the trial court on his ineffective assistance of counsel claims.  Petitioner first raised this issue in his motion for relief from judgment.  The trial court denied relief on this claim finding that appellate counsel filed a timely motion to remand with the Michigan Court of Appeals, which was denied "for failure to persuade the Court of a necessity of a remand," such that Petitioner could not establish that counsel was ineffective.  This Court agrees that this

25

claim lacks merit. Appellate counsel timely sought a remand to develop the ineffective assistance of trial counsel claims, but his request was denied. There is no indication that the trial court would have reached a different conclusion had the request been made earlier, particularly given that the trial court denied Petitioner's motion for new trial and his motion for relief from judgment and did not find that an evidentiary hearing was necessary. Petitioner has not shown that appellate counsel was deficient or that he was prejudiced by counsel's conduct. Habeas relief is not warranted on this claim.

### 2.    Severance Argument

Petitioner also asserts that appellate counsel was ineffective for failing to properly argue the severance issue (raised via a claim of ineffective assistance of trial counsel) on direct appeal. This claim lacks merit. The record reflects that appellate counsel raised and fully briefed the issue on direct appeal. Petitioner neither alleges nor establishes what additional theories or more persuasive arguments appellate counsel could have raised on direct appeal which would have affected its outcome. He has failed to establish that appellate counsel erred or that he was prejudiced by counsel's conduct as required by *Strickland*. Habeas relief is not warranted on this claim.

### 3.    Failing to Raise Issues on Appeal

Petitioner also asserts that appellate counsel was ineffective for failing to raise the issues presented in his motion for relief from judgment on direct appeal. This claim lacks merit. Petitioner cannot establish that appellate counsel was ineffective under the standard set forth in *Strickland* as the foregoing claims lack merit. Habeas relief is not warranted on this claim.

### D.    Cumulative Error

26

Petitioner asserts that he is entitled to habeas relief because the cumulative effect of the alleged errors by counsel deprived him of a fair trial. Respondent contends that this claim is barred by procedural default and/or lacks merit. Petitioner cannot establish that habeas relief is warranted based upon cumulative error because he has failed to demonstrate any underlying constitutional violation. Furthermore, the United States Court of Appeals for the Sixth Circuit has stated that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Habeas relief is therefore not warranted on this claim.

### V.  Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

**IT IS SO ORDERED.**

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record and Jimmy Morgan, Reg. No. 141296, Pine River Correctional Facility, 320 N. Hubbard, St. Louis, MI 48880 on September 29, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager